## Redstone Township School Directors et al. v. Verbanic et al.

*James A. Reilly* and *Harold C. Marshall*, for petitioners.

*Nicholas Comfort*, for respondents.

DUMBAULD, P. J., March 25, 1942.—The school directors of the School District of Redstone Township, Fayette County, Pa., file their petition wherein they pray that the court may, by declaratory judgment, determine the legality of a resolution, dated November 25, 1941, whereby the said board of school directors undertook to increase the salary of the teachers, janitors, repairmen, truant officer, bus drivers and clerk, as at that time employed, in the amount of 15 percent of their present salaries. Such increase was to be effective as of the beginning of the school teaching year, September 3, 1941. The contracts of the professional employes heretofore named were to be altered to reflect this increase as of September 3, 1941.

The petition asserts "that an emergency existed, which necessitated and justified their action in voting the increase in salaries and wages and that the action of the board should be declared legal and that the terms of the resolution should be executed".

The prayer of the petition is that the court answer three questions:

"1. Was the action of the board on November 26, 1941, increasing by 15 percent the salaries and wages of the employes named in the resolution, legal, binding on the present board of school directors and enforceable by those who stand to benefit thereby?

"2. Could the contracts of said employes be altered legally to reflect the specified increase as of September 3, 1941?

"3. Did the school board, under the facts stated, have the legal right to create an increased debt which was in excess of the budget in the amount of $29,273.63?"

The School Teachers' Association of Redstone Township, Fayette County, Pa., by a committee composed of John M. Burns, E. R. O'Neil, and Alfred DeFigio, filed a petition joining in the prayer of the petition of the. school board.

Nick Verbanic and Andrew Richnafsky make answer to the petitions, and aver that they oppose the action of the board of school directors for the reason that the same is illegal.

They admit that the statements of fact as contained in the petition are true, but deny the "conclusions" purporting to show the urgency for the granting of the prayer of the said petition. They pray for the dismissal of both petitions and a decree answering in the negative the questions propounded.

James A. Reilly, solicitor for the school board; Harold C. Marshall, attorney for the joining petitioners; and Nicholas Comfort, attorney for respondents, join in a stipulation which agrees that the issues of fact may be determined by the court without a jury, and judgment rendered upon facts so found.

*Findings of fact*

From the statements and admissions contained in the pleadings, the trial judge makes the following findings of fact:

1. The original petition is filed by the duly-elected, qualified, and acting members of the School Board of the School District of Redstone Township, Fayette County, Pa.

2. The joining petition is that of the School Teachers' Association of Redstone Township, Fayette County, Pa.

3. On May 21, 1941, the School Board of the School District of Redstone Township, in regular meeting convened, adopted a budget for the school years 1941-42, as required by the provisions of the School Code. This budget provided for the appropriation of certain sums of money for the salaries, wages, and pay of the super-

vising principal, teachers, and other professional employes of said school district.

A copy of this budget is attached to the petition, and is identified as "Petitioners' Exhibit A".

4. On November 21, 1941, a general strike call was issued and undertaken by and among the professional employes of the school district. This strike arose out of the discontent and dissatisfaction over salaries and wages. It was alleged to have been caused by the high cost of living and the unsatisfactory pay of said employes, both as to sufficiency and as to regularity.

5. The striking employes demanded of the school board that it increase the salaries, wages, or pay of all said employes, by a 15 percent increase, effective as of September 3, 1941.

6. On November 26, 1941, the school board of the said district convened in special session and passed a resolution purporting to meet the demands of the aforesaid professional employes.

A copy of the resolution, identified as "Petitioners' Exhibit B", is attached to the question, and is in the following language:

"PETITIONERS' EXHIBIT B"

"Copy of Resolution Adopted at the Special Meeting of November 26, 1941.

"Mr. DiLuzio introduced the following resolution:

" 'Resolved that the salaries of teachers, janitors, repairmen, truant officer, bus drivers and clerk, as now employed, be increased fifteen (15%) per cent of the present salaries. Such increase to be effective as of the beginning of the school teaching year, September 3, 1941, and that the contracts of teachers, janitors, repairmen, truant officer, bus drivers and clerk be altered to reflect this increase as of September 3, 1941; providing, however, that this resolution shall be of non-effect and be nullified if it be determined by the court that such increase be illegal and that no increase be

effective until the court has actually determined the question as set forth in paragraph 2 of this resolution:—

" '2. Resolved Further:—That the solicitor for the school district be authorized, empowered and directed to prepare a set of facts by way of a case stated or declaratory judgment petition which facts shall set up the true situation regarding the budget prepared by the school directors and filed for the year 1941-42, and all other matters necessary to present the true situation to the court whether it be a case stated or a declaratory judgment petition and proceed to have the court determine the rights of the school directors in this behalf.

" '3. Resolved Further:—That in the event the court determines that the school district has a right to increase the said salaries but has no right to make such increase retroactive, then the salaries shall be increased from this date forward.'

—motion seconded by Mr. Burdock."

7. Compliance with this action of the board will and does increase the budget in the total amount of $29,273.63. This sum is the total of additions to the several items of the original budget, as shown in detail by setting opposite the figures of the original budget the figures indicating the increase of the individual appropriations, as shown by a statement attached to and made a part of the original petition, identified as "Petitioners' Exhibit C".

8. The school board did not anticipate the demand for this increase in salaries and wages and therefore made no provision for funds to meet it in the terms of the original budget. At the time of filing of the petition there were no funds available to meet the increase in salaries and wages; there was no unencumbered balance which could be transferred from any other fund-to the fund allocated to salaries and wages; and it is necessary to exceed the budget in the items above

referred to, and in the whole budget totals, in the manner and amount as above stated.

9. The contention of petitioners that an emergency existed which necessitated and justified their action in voting the increase in salaries and wages is not sustained and we find as a fact that there was not, at the time of the adoption of the resolution, an emergency justifying the action outlined in the resolution, within the meaning of the word "emergency" as defined in the School Code of May 18, 1911, P. L. 309.

*Discussion*

The Board of Directors of the School District of Redstone Township, by its petition, prays the court to answer three questions:

"1. Was the action of the board on November 26, 1941, increasing by 15 percent the salaries and wages of the employes named in the resolution, legal, binding on the present board of school directors, and enforceable by those who stand to benefit thereby?

"2. Could the contracts of said employes be altered legally to reflect the specified increase as of September 3, 1941?

"3. Did the school board, under the facts stated, have the legal right to create an increased debt which was in excess of the budget in the amount of $29,273.63?"

The Legislature of Pennsylvania has answered all three of these questions.

The Act of May 13, 1937, P. L. 605, amending section 563 of the School Code of May 18, 1911, P. L. 309, provides as follows:

"The board of school directors of each school district of the second, third, or fourth class shall, annually, at least thirty days prior to the adoption of the annual budget, prepare a proposed budget of the amount of funds that will be required by the school district in its several departments for the following fiscal year. Such proposed budget shall be prepared on a uniform form, prepared and furnished as hereinafter provided, and

shall be apportioned to the several classes of expenditures of the district as the board of school directors thereof may determine. Final action shall not be taken on any proposed budget, in which the estimated expenditures exceed two thousand dollars ($2,000), until after ten days' public notice: Provided, however, That nothing in this act shall be construed to prevent any school district, whose total estimated expenditures do not exceed two thousand dollars ($2,000), from holding a public hearing. The proposed budget shall be printed, or otherwise made available for public inspection to all persons who may interest themselves, at least twenty days prior to the date set for the adoption of the budget. The board of school directors, after making such revisions and changes therein as appear advisable, shall adopt the budget and the necessary appropriation measures required to put it into effect. Within fifteen days after the adoption of the budget, the board of school directors shall file a copy of the same in the office of the Department of Public Instruction. In all school districts under the direction of a county superintendent, the county board of school directors shall inspect the annual budget and shall render such advice and assistance regarding the same, as may seem proper, before the said budget shall be signed and forwarded to the department by the county superintendent.

"The board of school directors may, during any fiscal year, make additional appropriations or increase existing appropriations to meet emergencies, such as epidemics, floods, fire, or other catastrophes, the funds therefor to be provided from unexpended balances in existing appropriations, from unappropriated revenue, if any, or from temporary loans. Such temporary loans, when made, shall be approved by a two-thirds vote of the board of school directors.

"The board of school directors shall have power to authorize the transfer within the same fund of any unencumbered balance, or any portion thereof, from

one spending agency to another, but such action shall be taken only during the last nine months of the fiscal year, and, except as hereinbefore otherwise provided, no moneys apportioned to any class of expenditures shall be used for purposes other than designated for said class in said budget. The total amount of such budget shall not exceed the amount of funds, including the proposed annual tax levy and State appropriation, available for school purposes in that district."

By the express terms of this statute, a board of school directors is given authority to make additional appropriations or increase existing appropriations to meet emergencies. To indicate the precise meaning of the word "emergencies" the legislature indicates what meaning it gives to the word. Epidemics constitute emergencies; floods, which may destroy much school property, are classified as emergencies; fire, another destructive agent which may lay waste one or more of the school buildings of the district, constitutes an emergency. Other catastrophes are contemplated by the legislature and such other catastrophes are classified as emergencies. The comprehensive term "other catastrophes" is to be construed in accordance with the rule that such other catastrophes must be of a like character to such situations as are specifically enumerated. We cannot, by any stretch of construction, classify a strike of contractual professional employes as "another catastrophe", comparable with epidemics, floods, and fires.

A sane, tolerant, and comprehensive view of the situation, as it existed in this school district on November 21, 1941, is required in arriving at a correct solution. We find that the budget was adopted on May 21, 1941. The school term began on September 3, 1941. Sometime between these two dates, presumably near the latter date, all the professional employes of the petitioning school district were required to sign contracts with the school district, in which wages and salaries of such

professional employes are specifically set forth. An increase in the cost of living which would or could seriously affect the purchasing power of professional employes as of November 21, 1941, must of necessity have been anticipated in September of that year. When these professional employes, therefore, accepted the terms of their contracts for the school year beginning on September 3, 1941, they were in honor and in legal duty bound to accept any sacrifices involved in the carrying out of the terms of these contracts. They could not possibly, by a concerted breach of these solemnly executed contracts on November 21, 1941, create an emergency which would justify the school board in increasing the budget allowance for the payment of the wages and salaries by the sum of $29,273.63.

If petitioners, the school board, could not, by the exercise of prudence, in May 1941, foresee the conditions as they actually existed in September and November 1941, an awakening, as a result of the unlawful conduct of the professional employes on November 21, 1941, could likewise not possibly be considered an emergency justifying their action as expressed in the resolution of November 26, 1941.

Further elaboration cannot make plainer the conclusion reached. The School Code provides for the expenditure of school funds in every detail. Expenditure otherwise is illegal. The budget in this case made in due time cannot be exceeded except in case of emergency. We have found as a fact that no emergency existed at the time the board of directors passed the resolution in question. We do not assume to decide the merits of the contention of the professional employes that their salaries and wages are inadequate. We simply decide that their conduct in repudiating the contracts into which they freely entered with full knowledge of the upward trend of living expenses cannot be considered as creating an emergency. The time to determine the question of the increase in salary and wages

proportionate to the increase in the cost of living is when the budget is in contemplation, not in the middle of the term contracted for on the basis of the existing budget.

Section 511 of the amendment to the School Code approved July 18, 1935, P. L. 1192, contains this language:

"No work shall be hired to be done, no materials purchased, and no contracts made by any board of school directors which will cause the sums appropriated to specific purposes in the budget to be exceeded."

No other provision than that contained in section 563, already quoted, is made for an increase of such budget appropriation.

Section 516 of the same amended act specifically declares illegal the use of school funds in any other manner than as provided in the code. We quote:

"The board of school directors in every school district in this Commonwealth shall have the right to use and pay out, in the manner herein provided, any funds of the district for any and all of the purposes herein provided, subject to all the provisions of this act. *The use or payment of any public school funds of any school district in this Commonwealth, in any manner or for any purpose not provided in this act, shall be illegal.*" (Italics supplied.)

The ninth finding of fact, namely, that no emergency existed at the time of the adoption of the resolution, makes it necessary that the questions propounded be each answered in the negative. Specifically the answer to question 1 is no, the answer to question 2 is no, and the answer to question 3 is no.

### Conclusions of law

The trial judge states the following conclusions of law:

1. The resolution of November 26, 1941, "Petitioners' Exhibit B", is illegal, null, and void.

2. The facts set forth in the petition, as found by the trial judge, did not and do not constitute an emergency, justifying the increase in the items appropriated by the budget adopted May 21, 1941, to the total amount of $29,273.63 in excess of the items appropriated in the original budget.

3. The resolution itself being illegal, null, and void, the attempt to make it retroactive so as to effect the increase of salaries and wages of professional employes as of September 3, 1941, is likewise illegal, null, and void.

4. The strike undertaken by the professional employes in repudiation of duly-executed contracts, effective during the school year 1941-42, constitutes an unauthorized breach of the several contracts involved, and an illegal effort to exercise the right of collective bargaining.

5. The petition for a declaratory judgment validating the resolution as adopted must be dismissed at the cost of petitioners.

*Decree*

Now, March 25, 1942, upon consideration of the petition and joining petition for a declaratory judgment, and answer thereto, it is adjudged, ordered, and decreed that the petition for a declaratory judgment validating and declaring legal the resolution of November 26, 1941, "Petitioners' Exhibit B", be and the same hereby is dismissed at the cost of petitioners.